UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| MARSHA AVERY | : | DOCKET NO.  2:12-cv-1337 |
| VS. | : | JUDGE MINALDI |
| U.S. COMMISSIONER OF SOCIAL SECURITY | : | MAGISTRATE JUDGE KAY |

REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of Social Security Benefits.  This matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

After review of the entire administrative record and the briefs filed by the parties, this court finds that the Commissioner's decision should be AFFIRMED and this matter DISMISSED with prejudice.

PROCEDURAL HISTORY

Plaintiff filed an application for supplemental security income and disability insurance benefits alleging disability beginning on June 1, 2009.  Tr. 113-124.  The claim was initially denied on October 26, 2009.  Tr. 59-62.  Following an administrative hearing held on December 9, 2010, the Administrative Law Judge (ALJ) issued an unfavorable decision on April 1, 2011. Tr. 12-22.  The ALJ found plaintiff's impairments of disorder of the left knee and obesity were severe but he found she retained the residual functional capacity ("RFC") to perform light work with certain restrictions.  *Id.*  Relying on the testimony of a vocational expert ("VE") the ALJ

found that plaintiff was capable of performing past relevant work.  Thus the ALJ determined that plaintiff was not disabled.  *Id.*

Plaintiff filed a request for appellate review of this decision and on March 23, 2012, her request was denied.  Tr. 1-5.  On May 24, 2012, plaintiff filed suit in this court appealing the determinations of the Commissioner.  Doc. 1.

## FACTS AND MEDICAL EVIDENCE

### A.  *Facts*

Plaintiff, age 42 at the time of the hearing, is a high school graduate and has post-graduate training as a nursing assistant, emergency medical technician, and phlebotomist.  Tr. 40, 151.  She testified that she was last employed as a phlebotomist but only held that job for two months before being terminated.  Tr. 37-38.  Although she was employed at this job after her alleged onset date, the ALJ determined that that position did not rise to the level of substantial gainful employment.  Tr. 17.  Her other past employment included working in a group home for disabled individuals, data entry clerk/pit clerk for a casino, nursing assistant, emergency medical technician, phlebotomist, and telemetry clerk (cardiac monitor technician).  Tr. 51-53, 135.

At the hearing when the ALJ asked plaintiff what keeps her from working, she replied "[t]he swelling, the pain.  I can't sit for a long period of time, because when I go to get up, that's putting pressure on the knee, and by that time, it has already swollen up.  So, for me to sit down and to get up, I can't move as though one is required to move, because then I'm limping."  Tr. 34.

Plaintiff testified that she underwent surgery on her left knee in September of 2009 to repair meniscal tears.  Tr. 33.  She stated that she recently saw another orthopedic surgeon for consultation regarding possible surgery for another tear in her left knee.  Tr. 30-31, 40-41.

According to plaintiff she worked up until the time she first injured her knee which was on June 19, 2009. She injured her knee at her son's tee ball game. Tr. 35. After her injury and first surgery, from February to April 2010, she attended a thirteen week training to become a phlebotomist. Tr. 36-37. Plaintiff testified that, following her training, she went to work for Lifeshare Blood Centers in the mobile unit and was working at least forty hours a week. Plaintiff stated that, at the end of a work day, she was in "excruciating pain." Tr. 36. She left that job because of an allegation of insubordination. Tr. 38. She stated that she has not looked for work since that time. *Id.*

Plaintiff indicated that working long hours has put her knee under strain and she cannot lift or climb anymore. Her knee swells to the point that she "walks like a 70 year old." Tr. 40. She testified that she has worn a knee brace on her left knee since June of 2009. She had steroid injections in her knee both before and after her surgery. Tr. 42-43. She is taking several medications some of which make her drowsy. Tr. 44.

Plaintiff lives alone with her eight year old son. She is five feet seven inches tall and weighs 280 pounds. She can no longer drive long distances, and some days she gets her son ready for school and goes back to bed until it is time for him to come home. Tr. 44-45. She stated that she experiences swelling of her left and right ankles but predominately the left. Besides taking medicine for the swelling, she has to elevate her leg twelve inches above her waist. Tr. 46, 50. Plaintiff stated that she needs to elevate her leg every two hours when the swelling starts for a total of four to six hours in an eight-hour day. Tr. 51.

Plaintiff also suffers from Type II diabetes, chronic bronchitis, and hypertension. When her blood pressure is elevated, she experiences blurred vision and headaches. *Id.* She indicated that she is not taking medication for depression but she does experience depression. Tr. 47.

### B.  Medical Evidence

#### 1.  Southwest Louisiana Center for Health Services

The medical evidence from Southwest Louisiana Center for Health Services shows an office visit on July 17, 2008, where plaintiff complained of insomnia, type II diabetes, gastroesophageal reflux disease, pancreatitis, and hyperlipidemia.  Tr. 193.  On March 10, 2009, plaintiff was seen for swelling and pain in her legs, and dyspnea.  Her diagnoses at the time were hypertension, peripheral swelling, dyspnea and type II diabetes.  Tr. 198.  On April 7, 2009, plaintiff indicated she was feeling better and there was decreased swelling and dyspnea.  The notes indicate that she inhaled spores of mold at work.  Tr. 197.  On June 29, 2009, plaintiff was seen for left knee swelling and pain.  An MRI was ordered and she was referred to an orthopedic doctor.

#### 2.  St. Patrick Hospital

Evidence submitted from St. Patrick Hospital shows plaintiff was admitted on March 13, 2009, for dyspnea.   An echocardiographic report revealed normal M-mode and 2-D echocardiogram with normal left ventricular contractility and no significant valvular abnormalities.  Tr. 221-22.  On June 22, 2009, plaintiff complained of twisting her left knee on June 19, 2009, and was experiencing swelling.  She was advised to follow up with her primary care physician, keep the knee elevated, use ice, crutches and continue prescribed pain medication.  Tr. 223-27.

#### 3.  Lake Charles Memorial Hospital

Plaintiff was admitted to the emergency room on June 19, 2009, for left knee pain and swelling.  She reported twisting her left knee while demonstrating how to swing a baseball bat to her son.  The impression was left patellar dislocation.  She was discharged with instructions to

use crutches and ice for 24 hours.  She was prescribed pain medication and told to follow up with her primary care physician.  Tr. 186-90.

### 4.   *Southwest Louisiana Imaging*

An MRI performed on July 1, 2009, revealed (1) medial and lateral meniscal tear to include a bucket-handle tear of the medial meniscus; (2) sprain of the MCL; (3) Knee joint effusion and small Baker's cyst with possible recent Baker's cyst rupture; and (4) intramedullary bone lesion of the distal femur which is likely an incidental enchondroma.  Tr. 199-200.

### 5.   *Bernauer Clinic – R. Dale Bernauer, M.D. and Stephen J. Flood, M.D.*

On July 13, 2009, plaintiff was seen by Dr. Bernauer who noted tenderness over the medial meniscus.  Her range of motion showed flexion of 110 degrees and extension of 10 degrees.  Positive results were indicated on the Apley and McMurry tests.  He noted that her knee was stable in anteroposterior and mediolateral planes and x-rays were negative.  Her MRI showed a bucket handle tear.  He referred to physical therapy for three weeks.  He indicated that if physical therapy fails she will need arthroscopic surgery.  She was issued a work excuse stating that she was unable to return to work as of that date.  Tr.201-02, 215.

Plaintiff returned on August 3, 2009, and reported that she went to physical therapy but her knee continued to hurt.  She was referred to Dr. Flood for an appointment.  Tr. 213.  On August 10, 2009, Dr. Flood examined plaintiff.  His examination revealed that she did not have joint effusion on that day but had marked medial joint line tenderness, less lateral.  X-rays showed very mild medial and lateral Fairbanks signs.  Her MRI has evidence of a displaced bucket handle tear and a large joint effusion with small Baker's cyst.  He administered a steroid injection.  He reported that if the injection helps, surgery will be postponed.  If no improvement, he will perform left knee surgery in four weeks.  Tr. 211-12.

Dr. Flood performed surgery on September 1, 2009, at Women's and Children's Hospital. The postoperative diagnosis was medial meniscal tear left knee with synovitis with anterior detachment of an incomplete discoid medial meniscus.  Tr. 232-33.  She returned to Dr. Flood on September 9, 2009.  Dr. Flood noted that her knee was benign and discussed his findings at surgery and a possible need for a future meniscectomy if the meniscal repair does not work.  He restricted her driving for four weeks.  Tr. 231.

### 6.  *Action Potential Physical Therapy*

Plaintiff was treated from July 15, 2009, through August 3, 2009, at Action Potential Physical Therapy.  On August 31, 2009, physical therapist Kerry Woods reported that plaintiff's range of motion was improved but remained decreased.  Her left knee active flexion had increased from 102 degrees to 120 degrees with positive flexis of 122 degrees.  Her strengthening program remained difficult due to her symptoms.  She noted that plaintiff was progressing slowly.  Tr. 210.

### 7.  *Denise Malancon[1]*

Denise Malancon conducted a physical residual functional capacity (RFC) assessment October 26, 2009.  She determined that plaintiff had exertional limitations of occasionally lifting twenty pounds, frequently lifting ten pounds, standing and/or walking six hours in an eight-hour-work day, and sitting six hours in an eight-hour-work day.  She found no limitations on plaintiff's ability to push and pull.  She indicated that plaintiff could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  Plaintiff was limited to never climbing ladders, ropes and scaffolds.  There were no manipulative, visual, communicative or

---

[1] Denise Malancon's occupation/ professional title is not found on the physical RFC assessment.  This assessment was not considered by the ALJ in his decision.

environmental limitations found.  A conclusion as to plaintiff's RFC was not rendered.  Tr. 234-41.

### 8.  *Open Air MRI*

A subsequent MRI taken on October 20, 2010 showed (1) a small knee joint effusion with a Baker's cyst; (2) a large bucket handle tear involving the medial meniscus; (3) an oblique tear through the anterior horn of the lateral meniscus; and (4) mild chondromalacia.  Tr.271-72.

### 9.  *Nathan Cohen M.D.*

Dr. Nathan Cohen saw plaintiff on December 8, 201,0 on a referral from Dr. Bernauer.  Her main complaint was left knee pain.  He diagnosed medial and lateral meniscus tears in the left knee.  He recommended conservative treatment and administered a steroid injection on that date.  Tr. 276-79.  On January 20, 2011, plaintiff reported that she had several weeks of moderation to her left knee pain but now complains of extreme pain over both medial and lateral compartments of her knee.  He diagnosed medial-lateral meniscal tears of the left knee and chondromalacia of the left knee.  At this time plaintiff was deemed a candidate for arthroscopic surgery on her left knee.  Tr. 291-92.

On February 16, 2011, surgery was performed at Lake Charles Memorial Hospital.  The postoperative diagnosis was bucket handle tear of the medial meniscus left knee, superficial tear anterior horn lateral meniscus left knee, chondromalacia grade IV (focal) lateral femoral condyle left knee, and chondromalacia grade II/III patellofemoral joint left knee.  Tr. 297-99.

On February 18, 2011, plaintiff returned to Dr. Cohen arriving in a wheelchair and carrying a walker.  Dr. Cohen advised her to get rid of the wheelchair and walker and to gradually increase her activity.  Tr. 300.  On February 24, 2011, Dr. Cohen noted that plaintiff was "getting along extremely well."  She had no complaints and no pain.  His examination

revealed excellent range of motion, no evidence of infection and a reasonable gait.  She was referred to physical therapy.  Tr. 301.  When plaintiff returned on April 14, 2011, she stated that she has some discomfort in her knee and swelling from her knee extending down to her foot/ankle.  She indicated that she was unable to complete her physical therapy due to surgery for an ingrown toenail; however, she stated she would return.  The exam revealed functional range of motion and gait.  Tr. 302.

### 10. R. Dale Bernauer, M.D.

At the request of Disability Determination Services, Dr. Bernauer performed an orthopedic examination on January 5, 2011.  He noted that plaintiff complained of left knee pain. She had surgery on September 1, 2009, performed by Dr. Flood and she was currently seeing Dr. Cohen who had performed a steroid injection.  She stated that the injection did not help and she was considering another surgery.

Dr. Bernauer noted that she walked with a limp on her left leg.  His examination showed no deficits in any musculoskeletal system, excluding the left knee.  Examination of her left knee showed she lacked 10 degrees of extension and flexion was 90 degrees.  Her knee was stable in anteroposterior and mediolateral planes and the patella compression sign was positive.  Plaintiff had full motion of her left hip and ankle.  Dr. Bernauer opined that plaintiff could not stand for longer than ten minutes or walk further than one hundred yards.  He stated that she cannot stoop, crawl, or climb.  Tr. 282-83.

### 11. Lake Charles Memorial Team Therapy Rehabilitation

Plaintiff completed fourteen sessions of physical therapy from February 28 to April 28, 2011.  A report dated April 13, 2011, indicates that her range of motion is within functional limits and all manual muscle testing was 5/5 strength.  Tr. 311-12.  A report dated May 4, 2011,

notes that at the completion of fourteen sessions plaintiff demonstrated a 5/5 strength of the left lower extremity and a functional range of motion.  Although plaintiff continued to report knee pain, her gait was normalized and all objective findings were within normal limits.  Tr. 309-10.

## STANDARD OF REVIEW

"In Social Security disability cases, 42 U.S.C. § 405(g) governs the standard of review." *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Frith v. Celebrezze*, 333 F.2d 557, 560 (5th Cir. 1964)).  The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error.  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (quoting *Greenspan*, 38 F.3d at 236).  "It is 'more than a mere scintilla and less than a preponderance.'"  *Id.*  (quoting *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)).  It is "such relevant evidence as a reasonable mind might accept to support a conclusion.  It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

In applying the substantial evidence standard, the reviewing court critically inspects the record to determine whether such evidence is present, "but may not reweigh the evidence or substitute its judgment for the Commissioner's."  *Perez*, 415 F.3d at 461 (citing *Greenspan*, 38 F.3d at 236; *Masterson*, 309 F.3d at 272).  Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed.  *Richardson v.*

*Perales*, 402 U.S. 389, 390 (1971).  "Conflicts of evidence are for the Commissioner, not the courts, to resolve."  *Perez*, 415 F.3d at 461 (citing *Masterson*, 309 F.3d at 272).

## LAW AND ANALYSIS

### A.  Burden of Proof

The burden of proving that he or she suffers from a disability rests with the claimant. *Perez*, 415 F.3d at 461.  The claimant must show that he or she is unable to engage in a work activity "involving significant physical or mental abilities for pay or profit."  *Id.* (citing 20 C.F.R. § 404.1572(a)-(b)).  The ALJ conducts a five-step sequential analysis to evaluate claims of disability, asking:

> (1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working); (2) whether the claimant has a severe impairment[2]; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work.

*Id.* (citing 20 C.F.R. § 404.1520).  If the claimant meets the burden of proof on the first four steps, the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy.  *Id.*  "Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut this finding."  *Id.* (quoting *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000)).

---

[2]  A severe impairment or combination of impairments limits significantly a claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1521(a).  Basic work activities are defined at 20 C.F.R. § 404.1521(b). The term severe is given a *de minimis* definition as found in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). According to *Stone*, "[a]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  752 F.2d at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)).

If a severe impairment or combination of impairments is found at step two, the impairment or combined impact of the impairments will be considered throughout the disability determination process.  20 C.F.R. §§ 404.1520, 404.1523.  A determination that an impairment or combination of impairments is not severe will result in a social security determination that an individual is not disabled.  *Id.*

The analysis ends if the Commissioner can determine whether the claimant is disabled at any step.  *Id.* (citing 20 C.F.R. § 404.1520(a)).  On the other hand, if the Commissioner cannot make that determination, he proceeds to the next step.  *Id.*  Before proceeding from step three to step four, the Commissioner assesses the claimant's residual functional capacity (RFC).  *Id.* "The claimant's RFC assessment is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record."  *Id.* at 461-62 (citing 20 C.F.R. § 404.1545(a)(1)).  Specifically, in determining a claimant's RFC, an ALJ must consider all symptoms, including pain, and the extent to which these symptoms reasonably can be accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. § 404.1529; Social Security Ruling 96-8p.  The ALJ must also consider any medical opinions (statements from acceptable medical sources) that reflect judgments about the nature and severity of impairments and resulting limitations.  20 C.F.R. § 404.1527, Social Security Rulings 96-2p, 96-6p.  The claimant's RFC is considered twice in the sequential analysis—at the fourth step it is used to determine if the claimant can still do his or her past relevant work, and at the fifth step the RFC is used to determine whether the claimant can adjust to any other type of work. *Perez*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1520(e)).

Here, the ALJ found that plaintiff was not disabled at step five of the sequential analysis. The ALJ found that considering plaintiff's RFC, she was capable of performing past relevant work as a data entry clerk and cardiac monitor technician.  Tr. 21.

### B.  Plaintiff's Claims

In her appeal plaintiff argues that substantial evidence does not support the ALJ's decision.  Specifically, she sets forth the following arguments:

> (1)    The Appeal's Council failed to follow its own policies and procedures regarding the receipt of additional evidence.

>    (2)    Plaintiff's new evidence is a part of the record before the
>           court; the evidence undermines the ALJ's step four RFC
>           finding.
>
>    (3)    The ALJ's RFC finding is not supported by substantial
>           evidence.

### 1. Did the Appeals Council fail to follow its own policies regarding receipt of new and material evidence?

Plaintiff argues that the Appeals Council "implicitly" concluded that the new medical evidence she submitted was "new and material" but nevertheless failed to properly evaluate the evidence.  Plaintiff cites *Parsons v. Astrue,* No. 07-0486, 2008 WL 3836569 (W.D. La. July 25, 2008), for the proposition that a case must be remanded if the Appeals Counsel fails to consider new and material evidence submitted by the claimant.  Plaintiff submits that the new evidence, Dr. Nathan Cohen's medical records, reveal that plaintiff's orthopedic impairments were more limiting than the ALJ acknowledged in his opinion.  Thus, she contends that the Appeals Council should have overturned the ALJ's decision.

In response, the Commissioner argues that the Appeals Council properly considered plaintiff's post-decision evidence and its determination to deny her request for review was correct.  Relying on *Higginbotham v. Barnhart,* 405 F.3d 332, 335 n.1 (5th Cir.1999), the Commissioner contends that although the Appeals Council must consider additional evidence that plaintiff submits, it has no obligation to provide a detailed discussion of this evidence.

The Commissioner's regulations provide that the Appeals Council must consider "new and material evidence" that "relates to the period on or before the date of the [ALJ] hearing decision."  20 C.F.R. §§ 404.970(b), 416.1470(b).  New and material evidence submitted for the first time to the Appeals Council is considered a part of the record upon which the Commissioner's final decision is based.  *Higginbothom*, 405 F.3d at 337.

Here, the Appeals Council clearly considered Dr. Nathan Cohen's medical records. Although it did not specifically address the additional evidence in its decision, the Appeals Council is not required to do so per a memorandum from the Executive Director of Appellate Operation dated July 20, 2995.  *See Higginbothom,* 405 F.3d at 335 n.1*, see also Jones v. Astrue,* 228 Fed. App'x 403, 407 (5th Cir.2007).

In its Order dated March 23, 2012, the Appeals Council listed the following as additional evidence it considered:

| | |
|---|---|
| Exhibit 18 F | Medical Records from Dr. Cohen dated from January 20, 2011 to April 14, 2011 (14 pages). |
| Exhibit 19 F | Medical Records from Lake Charles Physical Therapy and Rehabilitation dated from February 16, 2011 to May 4, 2011 (24 pages). |

Tr. 5.  The Appeals Council stated it would review plaintiff's case if it "receive[d] new and material evidence and the decision is contrary to the weight of all the evidence now in the record."  Tr. 1.  It further stated that it considered the "additional evidence listed on the enclosed Order of the Appeals Council."  *Id.*  A review of the record shows that Dr. Cohen's medical records are included as Exhibit 18 F.  Tr. 290-302.  The Appeals Council concluded that the new evidence did not provide a basis for changing the ALJ's decision.  Tr. 1-4.

In light of the above, it can be said without uncertainty that the Appeals Council considered Dr. Cohen's medical records.  Plaintiff's argument in this regard is without merit.

**2. Does the evidence plaintiff submitted to the Appeals Council undermine the ALJ's RFC finding?**

**3. Is the ALJ's RFC finding supported by substantial evidence?**

Plaintiff's next two assignments of error both allege that the ALJ's RFC finding is not supported by substantial evidence.  Since they are related they will be discussed together below.

Plaintiff argues that:  (a) the new evidence of plaintiff's second surgery performed by Dr.

Cohen dilutes the record to such an extent that the ALJ's determination was not supported by sufficient evidence;   (b) the ALJ did not properly consider the medical opinion of Dr. Bernauer; (c) the ALJ improperly concluded that plaintiff engaged in substantial gainful employment after the onset of disability; and   (d) the ALJ failed to properly consider the effects of plaintiff's pain.

####   a.   *Appeals Council Evidence*

Plaintiff submitted medical records from Dr. Cohen and Lake Charles Physical Therapy and Rehabilitation for review at the Appeals Council level.   Plaintiff maintains that Dr. Cohen's records show that plaintiff underwent a second knee surgery on February 16, 2011.   Since this surgery took place after the administrative hearing, plaintiff maintains that the ALJ did not consider this in making his RFC determination.   Plaintiff argues that the medical evidence from Dr. Cohen dilutes the evidence upon which the ALJ relied to the extent that substantial evidence does not support the ALJ's decision.

In response, the Commissioner asserts that the Appeals council properly found that the additional evidence did not provide a basis for changing the ALJ's decision.

If a claimant submits new and material evidence which relates to the period before the ALJ's decision, the Appeals Council must consider the evidence in deciding whether to grant a request for review of an ALJ's decision.   20 C.F.R. § 404.970(b).   Evidence submitted for the first time to the Appeals Council is considered part of the record upon which the Commissioner's final decision is based.   *Higginbotham v. Barnhart,* 405 F.3d 332, 337 (5th Cir.2005).   When reviewing the ALJ's decision, this court should review the record as a whole, including the new evidence, to determine whether the Commissioner's findings are supported by substantial evidence, and should remand only if the new evidence dilutes the record to such an extent that

the ALJ's decision becomes insufficiently supported.  *Higginbotham v. Barnhart,* 163 F. App'x 279, 281-82 (5th Cir.2006).

Here, the ALJ determined that plaintiff was capable of performing light work except that she could only occasionally climb ramps and stairs and never climb ladders, ropes or scaffolds. He found that she can occasionally balance, stoop, and kneel but never crouch or crawl.  He also found that she cannot operate foot controls with her left lower extremity.  Tr. 18.  He based this determination on the entire record including the medical evidence submitted and the testimony offered at the hearing.  Specifically, the ALJ stated that

> [T]he medical evidence supports that the claimant has musculoskeletal problems involving her left knee and a weight problem – obesity.  The claimant underwent surgical intervention to repair the knee, however, the MRI evidence post surgery suggest [sic] continuing difficulty.  Nevertheless the claimant, post surgery, was able to go to school for a new career and to eventually work in the field she studied for, despite her impairment.  In addition, she did not stop working due to her medical condition, but secondary to termination.  Although the claimant's testimony suggest [sic] severe limitations in functioning such that the claimant is not able to work, and the overall record evidence supports significant limitations, the evidence also suggests that the claimant's [sic] is not restricted from all levels of work activity.

Tr. 21.

Dr. Cohen's records indicate that plaintiff underwent a second knee surgery two months following the administrative hearing.   At an appointment following the surgery Dr. Cohen advised plaintiff to gradually increase her activity and to get rid of the wheelchair and walker that she was using.  Tr. 300.  Dr. Cohen noted on February 24, 2011, that plaintiff was getting along extremely well and she had excellent range of motion and a reasonable gait.  Tr. 301.  On April 14, 2011, Dr. Cohen noted some issues with swelling and discomfort but a functional range

of motion and gait.  Tr. 302.  He released her from his care and advised her to follow up on an as needed basis.  *Id.*

Records from Lake Charles Physical Therapy and Rehabilitation[3] indicate that on March 2, 2011, plaintiff "moved furniture for several hours yesterday, and her knee has increased in swelling and pain as a result."  Improvement in knee flexion was noted.  Tr. 323.  On March 4, 2011, plaintiff stated that her knee pain was slowly decreasing and she was exercising more each day.  Improvement in strength and stability was noted.  Tr. 322.  At her therapy sessions on March 8, 2011, and March 11, 2011 plaintiff reported "no difficulties at this time."  A report dated May 4, 2011, states that plaintiff attended fourteen therapy sessions from February 29, 2011, to April 28, 2011.  At the conclusion of therapy, plaintiff demonstrated a 5/5 strength of the left lower extremity and a functional range of motion.  Although plaintiff continued to report knee pain and swelling, the report indicated that her gait was normalized and all objective findings were within normal limits.  Tr. 309-10.

Although plaintiff underwent a second surgery, this in and of itself is not sufficient to determine that the ALJ's decision was not supported by substantial evidence.  After examining the relevant new medical evidence, we find that although plaintiff may have continued to suffer from swelling and pain, the evidence does little to dilute the record to such an extent that the ALJ's decision was insufficiently supported.  In fact, the new medical evidence produced seems similar in nature to the evidence the ALJ had before him when his decision was handed down.  Plaintiff at that time was experiencing pain and swelling but the ALJ determined that she was

---

[3] The Appeals Council noted that these records show treatment for dates after the ALJ's decision.  "Evidence relating to the subsequent deterioration of a previously non-disabling condition is not material unless it relates to the time period for which benefits were sought and denied."  *Sanchez v. Barnhart*, 75 F. App'x 268, 270 (5th Cir.2003).  To the extent these records are for treatment beyond the date of the ALJ's decision, April 1, 2011, they will not be considered.

capable of some level of work.  We find that this decision is supported by substantial evidence and is free of legal error.

### b.  Opinion of Dr. Bernauer

Plaintiff argues that the ALJ violated Social Security Ruling (SSR) 96-6p by failing to state the specific amount of weight he afforded to Dr. Bernauer's consulting opinion.  She maintains that the ALJ's statement the he assigned "some but not controlling" weight to Dr. Bernauer's opinion is inconsistent with his RFC finding.

The Commissioner in response asserts that the ALJ's assessment of Dr. Bernauer's opinion is proper because his opinion was inconsistent with his physical examination findings.

Although Social Security Rulings do not have the force of law, they are binding on all components of the Social Security Administration and are to be relied upon as precedents in adjudicating other cases.  *Spellman v. Shalala,* 1 F.3d 357, 361 n.7 (5th Cir.1993), *James v. Astrue,* 2011 WL 202140 (W.D. La. Jan. 18, 2011).  SSR 96-6p provides that "state agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of medical issues in disability claims under the [Social Security] Act."  The ALJ may give weight to consulting opinions "only insofar as they are supported by evidence in the case record."  *Id.*  The ALJ cannot "ignore these opinions and must explain the weight given to these decisions in their opinion". *Id.*

In this case Dr. Bernauer opined that plaintiff could not stand for longer than ten minutes and could not walk further than one hundred yards.  He stated that she cannot stoop, crawl, or climb.  Tr. 282-83.  The ALJ recognized Dr. Bernauer as plaintiff's treating physician and stated:

> [T]he undersigned considered Dr. Bernauer's opinion and found that the claimant's own admitted functioning since the injury and the surgery was greater than that opined by Dr. Bernauer.

> Consequently, the undersigned gives some but not controlling weight to this opinion.

Tr. 21.  The ALJ did not "reject" or "ignore" Dr. Bernauer's opinion, although he is free to do so when the evidence supports a contrary conclusion.  *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir.1995).  Instead, the ALJ afforded "some" weight to his opinion and explained his reasons for doing so.  We find this to be in compliance SSR 96-6p.  Plaintiff's argument in this regard is without merit.

Plaintiff's next argument, that the ALJ's RFC finding is inconsistent with the fact that he gave Dr. Bernauer's opinion "some" weight, is also meritless.  Plaintiff maintains that if the ALJ afforded "some" weight to Dr. Bernauer's opinion that plaintiff could not stand for longer than ten minutes and could not walk further than one hundred yards, then plaintiff could not be given an RFC of light work because light work presupposes an ability to stand and walk for six hours in an eight hour work day.  What plaintiff fails to recognize is that the ALJ did "somewhat" rely on Dr. Bernauer's opinion – just not that portion cited by plaintiff.  Dr. Bernauer found that plaintiff could not stoop, crawl or climb.  The ALJ's restrictions on plaintiff's RFC included occasionally stooping, and climbing and never crawling.  Tr. 18.  Thus, it is clear that the ALJ did give Dr. Bernauer's opinion some weight and his RFC finding is not inconsistent therewith.  Furthermore, a review the entire record reveals that the ALJ's decision was justified and supported by substantial evidence.

### c.  *Substantial Gainful Employment*

Plaintiff states that the ALJ "expressly yet improperly concluded that Plaintiff engaged in substantial gainful employment after the July 2009 disability date."  Doc. 9, p. 10.  She argues that the ALJ should not have found her two month unsuccessful work attempt as a phlebotomist to be substantial gainful employment.  This argument is wholly misplaced.

In his decision the ALJ specifically found:

> The claimant has not engaged in substantial gainful activity since June 19, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

> The claimant worked after the alleged disability onset date but this work activity did not rise to the level of substantial gainful activity. At the hearing, the claimant testified that after certification as a phlebotomist, she returned to work, but only held the job for two months, secondary to termination due to insubordination.

Tr. 17. Later in his decision, the ALJ considered plaintiff's testimony concerning her certification and position as a phlebotomist only when evaluating her credibility. The ALJ stated that despite plaintiff's claims of severe limitations in functioning, she was able to "go to school for a new career and to eventually work in the field she studied for." Tr. 21. Clearly, the ALJ was assessing the credibility of plaintiff which is part of his function. SSR 96-7p.[4]

### d. Plaintiff's Pain

Finally, plaintiff argues that her pain constitutes the presence of a non-exertional factor which reduces the range of work in which she can engage. She cites the case of *Selders v. Sullivan,* 914 F.2d 614, 618 (5th Cir.1990), for the assertion that pain can be a non-exertional impairment that can limit the range of jobs open to a claimant. She maintains that the opinion of Dr. Bernauer supports this conclusion and that the ALJ's determination that she can perform a full range of light work[5] is not supported by substantial evidence.

The Commissioner asserts that it is incumbent upon plaintiff to prove she is disabled and there is no medical evidence to support these limitations in the record.

---

[4] [W]henever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

[5] The ALJ did not find that plaintiff could perform a "full range of light work;" rather, he found that she could perform a reduced range of light work imposing several restrictions. Tr. 18.

While an ALJ must take into account a claimant's subjective allegations of pain in determining her residual functional capacity, the claimant must produce objective medical evidence of a condition that reasonably could be expected to produce the level of pain alleged. *Harper v. Sullivan,* 887 F.2d 92, 96 (5th Cir.1989).  The mere existence of pain does not automatically create grounds for disability, and subjective evidence of pain will not take precedence over conflicting medical evidence. *Id.*

Here, the ALJ evaluated plaintiff's allegations of pain as required by SSR 96-7p and stated:

> [C]laimant's allegations of pain and functional limitations, secondary to the MDI's [medically determinable impairments] are not fully credible.  The claimant testified that standing and walking are a problem and that she has significant swelling of the left knee. Although, the evidence during the initial treatment (July 2009) revealed her treating source required her to elevate her leg due to swelling, such restriction was not continued post surgery.  This suggests that the swelling was not a hindrance to her ability to function.

Tr. 20.  We find that this conclusion is supported by substantial evidence of record.

Additionally, while plaintiff's subjective allegations of pain are significant, the new evidence which consists of records from Dr. Cohen and Lake Charles Physical Therapy and Rehabilitation do not suggest this intensity of pain.  Dr. Cohen released her from his care two months post surgery with "some issues of discomfort" but with a functional range of motion and gait.  Tr.302.  Plaintiff was able to successfully complete fourteen sessions of physical therapy and although she reported medial knee pain, her gait was normalized and all objective findings were within functional limits. Tr. 309.

Consequently, our review of the record reveals that substantial evidence supported the ALJ's determination that plaintiff had the residual functional capacity to do a reduced range of light work and that she could return to her past relevant work.

**CONCLUSION**

Based on the foregoing, we find substantial evidence of record and relevant legal precedent support the ALJ's decision that plaintiff is not disabled. It is therefore RECOMMENDED that the ALJ's decision be AFFIRMED and this matter be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have fourteen (14) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers this 7th day of November, 2013.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE